IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GENBAO GAO, | ) | CV. NO. 09-00478 DAE-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII | ) | |
| DEPARTMENT OF THE | ) | |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT WITH PREJUDICE

On January 11, 2010, the Court heard Defendant's Motion.  Andre S.

Wooten, Esq., appeared at the hearing on behalf of Plaintiff; Maria C. Cook,

Deputy Attorney General, appeared at the hearing on behalf of Defendant.  After

reviewing the motion and the supporting and opposing memoranda, the Court

**GRANTS** Defendant's Motion To Dismiss Plaintiff's Complaint with prejudice.

BACKGROUND

This is the second discrimination lawsuit filed by Plaintiff Genbao

Gao ("Plaintiff") against the State of Hawaii, Department of the Attorney General

("Defendant" or "Department"), arising from the same factual allegations.  On

April 6, 2009, Plaintiff filed his first lawsuit (Defendant's Motion to Dismiss

"Mot.," Doc. # 18, Ex. 1), which was later amended on July 30, 2009.  On

September 2, 2009, this Court dismissed Plaintiff's Complaint with and without

prejudice as untimely.  (Id., Ex. 2, "Order (1) Granting Defendants' Motion to

Dismiss With and Without Prejudice; and (2) Dismissing State Law Claims

Without Prejudice," "Order.")  Plaintiff was given until October 8, 2009 to re-file a

civil action relating to the second charge of discrimination filed with the Equal

Employment Opportunity Commission ("EEOC")), which was dismissed without

prejudice as an untimely filing.

On October 8, 2009, Plaintiff Genbao Gao filed the instant

employment discrimination lawsuit complaining that, while employed as a

statistician with the Department, Crime Prevention and Justice Division, he was

subject to:  (1) discriminatory treatment in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e; (2) discrimination by a state program receiving

federal funds in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §

2000d; (3) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e; and (4) discrimination in violation of Title I the Americans with

Disabilities Act, 42 U.S.C. § 12112.  (Doc. # 1.)

On October 29, 2009, Defendant filed the instant Motion to Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On December 24, 2009, Plaintiff filed his Opposition.  (Doc. # 18.)  The Court denied Plaintiff's Motion to Continue Hearing pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Doc. # 19) because Defendant's Motion was made pursuant to Rules 12(b)(1) and 12(b)(6) and therefore is not subject to the summary judgment standard in Rule 56.  (Doc. # 20.)  On December 30, 2009, Defendant filed its Reply.  (Doc. # 22.)

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556-57.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence.  In other words, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face.  See id. at 570.  "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."  McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

A motion to dismiss brought pursuant to the Federal Rules of Civil Procedure 12(b)(1) will be granted where the plaintiff fails to demonstrate subject-matter jurisdiction over the action.  Under Title VII of the Civil Rights Act of 1964, for the Court to have subject-matter jurisdiction the plaintiff must meet two requirements:  (1) the plaintiff must timely file his claim with the EEOC; and (2) the plaintiff must timely institute his action after receipt of a right-to-sue notice.  See 42 U.S.C. § 2000e-5(f)(1).

DISCUSSION

Plaintiff filed two charges of discrimination with the Hawaii Civil Rights Commission, which were dual-filed with the EEOC against the Department.  (Id. ¶ 37-38.)  The first charge was filed on or about August 5, 2008 (EEOC No. 486-2008-00409).  (Compl. ¶ 37.)  The second charge, filed on or about February

4

3, 2009 (EEOC No. 486-2009-00160), alleged discrimination because of national origin, disability, and retaliation for the first EEOC charge.  (Id.; Mot., Ex. 3.) Plaintiff's second EEOC charge relates to his January 20, 2009 termination, which Plaintiff received notice of on January 12, 2009.  (Mot., Ex. 3.)  Plaintiff checked the "national origin," "disability," and "retaliation" boxes, and not the "race" box, on his second EEOC charge.  (Id.)

At the outset, this Court must determine whether Plaintiff has timely filed this Complaint pursuant to 42 U.S.C. § 2000e-5.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).   With respect to Plaintiff's second EEOC charge, this Court has already determined that Plaintiff had until October 8, 2009 to file a complaint and he has done so timely.  See 42 U.S.C. § 2000e-5(f)(1); (Order at 1-2.)

With respect to Plaintiff's first EEOC charge, Plaintiff was issued his right-to-sue letter on January 5, 2009 and filed the instant Complaint approximately 276 days on October 8,.  The right-to-sue letter specifically states that Plaintiff must file his lawsuit within 90 days of receipt of the notice or the right to sue based on the charge will be lost.  (Mot, Ex. 4.)  Therefore, any claims based on Plaintiff's first charge of discrimination are barred.  See 42 U.S.C.

5

§ 2000e-5(f)(1) (stating that once a charge with the EEOC has been dismissed and notice given to the party, an aggrieved party may bring a civil action against the respondent named in the charge within 90 days).  However, this charge may still serve as a basis for informing Plaintiff's hostile work environment claim in Plaintiff's second EEOC charge.  See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002) (discussing the time limits under 42 U.S.C. § 2000e-5(e), which also may be triggered under 42 U.S.C. § 2000e-5(f)(1).)

I.      Factual Basis for Plaintiff's EEOC Charges

Plaintiff, self-identified as Chinese-American, became an employee of the Department in 2003 and worked at the Department until his termination in January 2009.  (Compl. ¶¶ 1, 4.)  Plaintiff was assigned to work as a statistician in the Crime Prevention and Justice Division, which was headed by Lari Koga ("Koga").  (Id. ¶ 12.)   Plaintiff's immediate supervisor was Paul Perrone ("Perrone").  (Id. ¶ 7.)

Plaintiff alleges employment discrimination against the Defendant. To support his assertion as to his first EEOC charge of discrimination, Plaintiff identifies several incidents of alleged discrimination.  First, Plaintiff claims that on one occasion in 2004, Perrone told another employee that Plaintiff was a "troublemaker" who should be avoided.  (Id. at 4.)  Second, Plaintiff claims that

Perrone required him to fill out 15-minute interval time sheets to account for his work, which was not required of other employees.  (Id.)  Third, according to Plaintiff, Perrone did not provide Plaintiff with back-up flash drives that were given to other statisticians.  (Id. at 3.)  Fourth, Plaintiff was allegedly suspended for 30 days by Koga for making a false accusation against his supervisor, Perrone, after Plaintiff inquired into the existence of Perrone's "Lava net dial up" computer access account.   Plaintiff believed that the computer access account was expensive and a redundant waste of government money.  (Id. at 4.)

         In support of his second EEOC charge, Plaintiff alleges that a January 12, 2009 confrontation with Perrone ultimately resulted in his January 20, 2009 termination, which was allegedly discriminatory and retaliatory.  On or about July 3, 2008, Plaintiff and Perrone had a meeting at Perrone's request, where, according to Plaintiff, Perrone denied Plaintiff's request to meet with an administrative assistant present.  (Id. at 6.)  When Plaintiff attempted to tape record the meeting, Perrone took the tape recorder away, and Plaintiff called the police.  (Id.)  Plaintiff claims he was placed on administrative leave as a result of this incident, and was subsequently terminated.  (Id. at 7.)

II.    <u>Violation of Title VII - Discriminatory Treatment (Count I)</u>

       Title VII of the Civil Rights Act of 1964 forbids employment discrimination against any individual based on that individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  A plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination by offering evidence that "give[s] rise to an inference of unlawful discrimination."  <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  A plaintiff may establish a prima facie case either by meeting the four-part test laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), or by providing direct evidence suggesting that the employment decision was based on an impermissible criterion.  <u>Cordova v. State Farm Ins. Cos.</u>, 124 F.3d 1145, 1148 (9th Cir. 1997) (citations omitted).

       A prima facie case under <u>McDonnell Douglas</u> requires a plaintiff to offer proof that:  (1) he belongs to a protected class; (2) he performed his job adequately or satisfactorily; (3) he suffered an adverse employment action; and (4) other similarly situated employees who do not belong to the same protected class were treated differently.  <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802).

"Similarly situated" employees are those who have similar jobs and display similar conduct.  <u>Vasquez v. County of L.A.</u>, 349 F.3d 634, 641(9th Cir. 2004); <u>see</u> <u>also</u> <u>Moran v. Selig</u>, 447 F.3d 748, 755 (9th Cir. 2006).  "Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees."  <u>Vasquez</u>, 349 F.3d at 641.

A.    First EEOC Charge (EEOC No. 486-2008-00409)

As discussed above, any causes of action by Plaintiff premised on his first EEOC charge are time barred.  Further, this Court dismissed with prejudice Plaintiff's prior complaint with this Court stating an identical claim of discrimination and based upon his first EEOC charge (EEOC No. 486-2008-00409).  (<u>See</u> Order at 18-19, 24.)

Accordingly, the Court GRANTS Defendant's Motion to dismiss with prejudice Plaintiff's Cause of Action I as to Plaintiff's first EEOC charge.

B.    Second EEOC Charge (EEOC No. 486-2009-00160)

Accordingly, this Court will address only Plaintiff's second EEOC charge.  As this Court previously noted, Plaintiff's second EEOC charge relates to Plaintiff's January 20, 2009 termination.  The EEOC charge states that January 12, 2009 was the date the discrimination took place and ended.  (Mot, Ex. 5.)  The only

event that occurred on January 12, 2009, as alleged in the charge, was the issuance

of Plaintiff's termination letter, with a final termination date of January 20, 2009.

      1.      Racial discrimination

      Plaintiff, who has counsel and is not proceeding pro se, does

not oppose Defendant's Motion on this ground and counsel for Plaintiff conceded

at the hearing that he does not state a claim of racial discrimination.  Accordingly,

the Court GRANTS Defendant's Motion to dismiss with prejudice Plaintiff's

Cause of Action I as to Plaintiff's claim of racial discrimination in violation of

Title VII.

      2.      National origin discrimination

      Plaintiff's Title VII cause of action for discrimination states:

> The actions of the employees of the Defendant stated above created a
> "hostile work environment" for Plaintiff and violated Plaintiff's right
> to non-discrimination in the terms and conditions of the Plaintiff state
> employment and his right to contractual and due process EEO fairness
> in violation of his constitutional rights to non-discrimination in public
> and Federally funded employment programs and to Due Process and
> Equal Protection of the Law in the right to make contracts under the
> United States Constitution.

(Id. at 9-10.)  Plaintiff does not sufficiently allege facts showing that any adverse

conduct on the part of the Department was based on national origin.  In his

Complaint, Plaintiff states that he is "the only Asian person in the department he

works in who was born in mainland China, and thus speaks with a slight accent[,]

[a]nd he has been treated differently as a result of this." (Id. ¶ 18.) However,

Plaintiff's articulated allegations of discrimination are limited to Plaintiff's

allegation that he was terminated as a result of a confrontation with his supervisor,

Perrone. (Compl. ¶¶ 22-34.) In fact, Plaintiff premises his termination on the fact

that "he could not prove to the Attorney General's satisfaction that Mr. Perrone

pushed him" (Compl. ¶ 34), not because of his national origin. Plaintiff failed to

provide any further evidence at the hearing that would support any inference that

his national origin was in any way a factor in his termination or that he was ever

treated differently on account of his national origin.

Additionally, Plaintiff does not indicate the national origin of

any similarly-situated employees or present any facts that would allow an inference

of disparate treatment based on race or national origin, and therefore cannot

establish a prima facie case of discrimination. See McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973). Plaintiff states that Defendant treated Perrone

differently from Plaintiff, however Plaintiff does not specifically allege that such

disparate treatment was based on national origin. (Compl. ¶ 21.) Further, the fact

that Plaintiff's supervisor's race is Caucasian does not automatically create an

inference of national origin discrimination, and a supervisor is not similarly situated to a lower level employee.  Vasquez, 349 F.3d at 641.

Plaintiff's language in the Title VII cause of action is convoluted and does not provide any additional evidence.  Without more, Plaintiff's conclusory allegations will not survive a motion to dismiss.  The Court determines that any amendment of Plaintiff's Title VII violation premised on national origin discrimination would not overcome the defective allegation.  An amendment would not save Plaintiff's suit because his complaint fails for lack of factual allegations. This is Plaintiff's third chance at framing his claims and factual allegations as he submitted both an original and amended complaint in his first lawsuit with this Court.  (See Order.)  Further, the Court again notes that Plaintiff is not proceeding pro se, but has legal counsel.

Because Plaintiff fails to state a Title VII cause of action regarding his second EEOC charge based on national origin discrimination, Plaintiff states no viable claims of discrimination pursuant to Title VII.  Accordingly, the Court GRANTS Defendant's Motion to dismiss Cause of Action I.

III.   <u>Violation of Title VI - Discrimination in State Program Receiving Federal Funds (Count II)</u>

42 U.S.C. § 2000d (Title VI) provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

However, 42 U.S.C. § 2000d-3 limits the conduct prohibited by 42 U.S.C. § 2000d:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

Accordingly, in order to state a claim for employment discrimination under Title VI, a plaintiff must allege and prove that the defendant received federal financial assistance, the primary objective of which was to provide employment, and that the funds went to discriminatory programs or activities.  <u>See</u> <u>Temengil v. Trust Territory of Pac. Islands</u>, 881 F.2d 647, 653 (9th Cir. 1989) (plaintiffs failed to establish that providing employment was primary purpose of program); <u>Reynolds v. School Dist. No. 1, Denver, Colo.</u>, 69 F.3d 1523, 1531(10th Cir. 1995) (to sustain a Title VI claim plaintiff must show that defendant received federal funds for a primary objective of providing for employment); <u>Ass'n Against</u>

Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981) ("for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment"); Maldonado v. City of Altus, 433 F.3d 1294, 1302-03 (10th Cir. 2006) (overruled on other grounds) (plaintiff's Title VI claim was properly dismissed where plaintiff never alleged that defendant received federal funds for the primary objective of providing employment or that plaintiff's salary was paid with federal funds).

The Court is required to take factual allegations in the Complaint as true in a motion to dismiss. Here, the Complaint alleges that Plaintiff:

> worked in areas impacted by Federal funds by collecting, collating and compiling reports and communicating with other State and Federal Law enforcement agencies in the reporting of facts and relevant statistics and compiling and disseminating relevant reports to other State and Federal Law enforcement agencies.

(Compl. ¶ 44.) Plaintiff has failed to allege that the Department of the Attorney General received federal financial assistance, the primary objective of which was to provide employment, and that the funds went to discriminatory programs or activities. (Compl. ¶¶ 3, 5, 6, 44.) Plaintiff does not assert that his position is federally funded or that federal funds are provided for employment, he simply

14

alleges that federal funds impact his area of work.[1]  In his Opposition, Plaintiff argues that "training for industry members" is protected under Title VI.  (Opp'n at 14-15.)  Even if Plaintiff's claim is true, Plaintiff fails to make the allegation in his complaint that he is an industry member receiving training and that federal funds were provided for the purpose of such training.  Plaintiff's allegation that his job was part of the FBI's uniform crime reporting system "which every county must submit data every year, and the State receives Federal funds for this work[,]" does not further illuminate that the federal funds were provided for the purpose of Plaintiff's employment.  (Compl. ¶ 5.)  Further, at the hearing counsel for Plaintiff conceded that the Department is not an employment program.

Accordingly, the Court GRANTS Defendant's Motion to dismiss with prejudice Plaintiff's Cause of Action II.

IV.   <u>Violation of Title VII - Retaliatory Treatment (Count III)</u>

Title VII makes it illegal for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

---

[1] Defendant has filed a motion to dismiss, not a motion for summary judgment, and the Court may not entertain evidence not in the Complaint.  Fed. R. Civ. P. 12(b)(6); (<u>see</u> Mot. at 14; Opp'n at 15.)

origin." 42 U.S.C. § 2000e-2(a)(1).  The anti-retaliation provision of Title VII, 42

U.S.C. § 2000e-3(a), provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under this subchapter.

Title VII, 42 U.S.C. §2000e-3(a).

Title VII retaliation is actionable only if it retaliated against conduct

that is protected under the statute.  42 U.S.C. § 2000e-3(a); see Learned v.

City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988) (noting that appellant did not

allege that he had opposed any form of discrimination protected under Title VII);

see also Silver v. KCA, Inc., 586 F.2d 138, 142 (9th Cir. 1978) ("[U]nder the clear

language of the 'opposition' clause . . ., a case of retaliation has not been made out

unless the 'retaliation' relates to the employee's opposition to a [Title VII]

violation."); Stucky v. Department of Education, State of Hawaiʻi, 283 Fed. Appx.

503, 505 (9th Cir. 2008) (citation omitted).

In the instant case, Plaintiff alleges he suffered retaliation and was

terminated as a result of reporting alleged government waste by his supervisor and

by complying with the State's workplace violence policy and "because he sought

16

to record the meeting" between himself and Perrone. (Compl. ¶ 43.) Plaintiff lists three ways in which he allegedly engaged in protected activities: "1) speaking out on an issue of public concern, reporting the possible waste of state funds at best; or 2) theft of state funds by Paul Perrone to support his pistol shooter enthusiast website, by arranging for the state to pay for a 'dial up account' it did not need or use, as the state employees already have broadband internet access at work, at worst. . .,"[2] and 3) "adhering to the posted 'WorkPlace violence policy' by calling the police when Paul Perrone took his tape recorder after Perrone demanded an immediate meeting with Plaintiff without any witnesses . . ." (Compl. ¶¶ 46-47.)

In paragraph 51 of the Complaint, Plaintiff summarized his Title VII retaliation claim as follows:

> 52. The Defendant's actions stated above constitute violations of Title VII, GERA provisions prohibiting retaliation against employees as Whistleblowers, if they raise legitimate issues of public concern, such as waste or fraudulent use of State and Federal funds.

(Compl. ¶ 51.) Even if Plaintiff's allegations that he was terminated because he engaged in whistleblowing of government waste is deemed as true, this does not constitute an actionable claim under Title VII, which only addresses discrimination on the basis of race, sex, religion, and national origin.

---

[2] Plaintiff may not base his retaliation on these two factual allegations as they relate to the first charge, which as explained above is time barred.

Although Plaintiff now argues in his Opposition that he was fired because he filed his first EEOC charge—a protected action under Title VII—Plaintiff failed to properly include this allegation, or the factual allegations necessary to support it, in his Complaint.[3]  (See Opp'n at 23-26; Compl. ¶¶ 31, 41-51.)  Plaintiff's only statements that possibly connect Plaintiff's retaliation claim to his original EEOC charge include two statements, neither of which are found in Plaintiff's actual cause of action for retaliation. The first statement is in the opening paragraph of Plaintiff's Complaint and states that Plaintiff has been

> harassed and retaliated against since filing a complaint with the EEOC in August 2008, and for which he was terminated in January 2009, in violation of State personnel regulations and State and Federal law, in a manner which is evidence of a pattern and practice of retaliation against this Chinese-American employee[.]

(Compl. ¶ 1.)

The second statement is under Plaintiff's Title VII discrimination claim and states "[w]hen Defendant retaliated against Plaintiff for exercising his GERA rights, this created another Title VII violation." (Id. ¶ 41.)  The Government Employees Rights Act ("GERA"), 42 U.S.C. § 2000e-16c amended Title VII to

---

[3] Even in his Opposition, Plaintiff continues to assert that "he was retaliated against excessively and unfairly for inquiring into whether or not Paul Perrone used State Funds improperly in a wasteful manner concerning the "Lavanet" dial up account in question[,]" and not because he filed an EEOC charge of National Origin discrimination. (Opp'n at 9 (emphasis in original).)

extend coverage of its employment discrimination provisions to such government employees: "[A]ny individual chosen or appointed, by a person elected to public office in any State ... to be a member of the elected official's personal staff," has rights under GERA to a workplace "free from any discrimination based on ... race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-16c(a)(1), 2000e-16b(a)(1).  Plaintiff does not fall under the GERA because he does not allege that he was chosen or appointed by a person elected to public office as a member of the official's personal staff.  (Compl. ¶ 4.)

 Plaintiff fails to allege sufficient facts to show that his filing of the EEOC charge of discrimination was the "reason" for his termination.  To prove a prima facie case of Title VII retaliation, the Plaintiff must show that (1) he engaged in a protected activity under Title VII, (2) that he was subjected to an adverse employment action by defendant employer, and (3) there was a causal link between the protected activity and the adverse employment action.  <u>Vasquez</u>, 349 F.3d at 646; <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000).

 Plaintiff provides nothing in his Complaint that shows a causal link between the EEOC charge of discrimination and his termination.  The Complaint alleges that Plaintiff's termination was a result of a confrontation he had with his

supervisor, and that he was terminated because the Attorney General did not believe his version of the events.  (See Compl. at ¶¶ 34, 43, 46-47, 51.)

In addition, the only protected activities mentioned in Count III paragraphs 46-47 of the Complaint (relating to Title VII retaliation) relate to government waste.  The absence of any mention of retaliation based on filing of the EEOC charge of discrimination or allegation related to Plaintiff's national origin fails to support Plaintiff's claim that he was terminated in retaliation for filing an EEOC charge of discrimination.  (Compl. at ¶¶ 46-47.)  In fact, Plaintiff explicitly states that he was retaliated against for investigating the alleged excess public spending by being suspended for 30 days—a suspension that occurred prior to Plaintiff's first EEOC charge.  (Compl. ¶¶ 15-16, 21; Opp'n at 23-24.)

Plaintiff states that his case is factually similar to Alaska v. EEOC, 564 F.3d 1062 (9th Cir. 2009); (Opp'n at 8.)  Plaintiff is mistaken.  Plaintiff quotes language that "the office may . . . have violated the Equal Protection Clause by intentionally refusing to redress the sexual harassment of Jones by another employee[,]" however, Plaintiff fails to make the claim that the Defendant failed to refuse to address any protected action of Plaintiff.  Instead Plaintiff alleges, "violations of Title VII, GERA provisions" do not prohibit "retaliation against employees as Whistle blowers, if they raise legitimate issues of public concern,

20

such as waste or fraudulent use of State and Federal Funds."  (Compl. ¶ 51.)

Moreover, <u>Alaska</u> involved the application of the sovereign immunity defense

under the GERA and Alaska's potential liability for sexual harassment in violation

of the First and Fourteenth Amendments.  In conjunction with Plaintiff's Title VII

claims, Defendant does not assert sovereign immunity.  As stated above, Plaintiff

does not fall under the GERA.  (Opp'n at 8; Compl. ¶ 4.)

Courts have dismissed Title VII retaliation claims on facts similar to

this case.  <u>See</u>, <u>e.g.</u>, <u>Jamil v. Secretary, Department of Defense</u>, 910 F.2d 1203,

1207 (4th Cir. 1990) ("[t]o state a claim of retaliation under Title VII, plaintiff

must at least allege that the [defendant] retaliated against her on account of her

whistleblowing and that her whistleblowing was in opposition to conduct or

practices in violation of Title VII."); <u>Nicastro v. Runyon</u>, 60 F. Supp. 2d 181, 185

(S.D.N.Y. 1999) (reporting of a supervisor's violation of work rules is laudable,

but it is not protected activity under Title VII); <u>Ahanotu v. Massachusetts Turnpike</u>

<u>Authority</u>, 466 F. Supp. 2d 378, 398 (D. Mass. 2006) (dismissing the Title VII

retaliation action because reporting of mismanagement and fraud is more

appropriately considered as being brought under the Massachusetts Whistleblower

statute).  Count III must be dismissed because Plaintiff fails to allege sufficient

facts to show that he was terminated in retaliation for any action protected by Title VII.

Accordingly, the Court GRANTS Defendant's Motion to dismiss with prejudice Plaintiff's Cause of Action III.

V.      Violation of Title I - Violation of the Americans with Disabilities Act (Count IV)

The Department has asserted Eleventh Amendment immunity with respect to Plaintiff's fourth cause of action.  (Mot. at 18.)  Title I of the Americans with Disabilities Act ("ADA") prohibits discrimination

> against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Under the Eleventh Amendment to the United States Constitution, a state is immune from certain actions brought in federal court by a citizen of that state or by citizens of other states.  See Papasan v. Allain, 478 U.S. 265, 276 (1986).  The Eleventh Amendment also bars actions against state agencies or departments unless a state waives sovereign immunity or Congress exercises its power to override the immunity.   Pennhurst State Sch. & Hosp. v. Halderman, 465

U.S. 89, 100 (1984); <u>Bd. of Trs. of the Univ. of Alabama v. Garrett</u>, 531 U.S. 356, 363 (2001); <u>Wilbur v. Locke</u>, 423 F.3d 1101, 1111 (9th Cir. 2005).

The State of Hawaii has not waived its immunity to these types of claims.  <u>See</u> <u>Doe v. State of Haw. Dep't of Educ.</u>, 351 F. Supp. 2d 998, 1018 (D. Haw. 2004) ("Although the State of Hawaii generally waives . . . sovereign immunity as to torts of its employees in the Hawaii State Tort Liability Act . . . this waiver only applies to claims brought in state courts and does not constitute a waiver of the State's Eleventh Amendment immunity.").  Nor has Congress abrogated Hawaii's Eleventh Amendment immunity with respect to these claims. In the <u>Board of Trustees of the University of Alabama v. Garrett</u>, 531 U.S. 356, 374 (2001), the U.S. Supreme Court held that states are immune from suits brought by private individuals for money damages under Title I of the ADA.[4]

The United States Supreme Court in <u>Garrett</u> noted that two methods of federal recourse under Title I of the ADA remain after its decision: the standards of

---

[4] Plaintiff alleges that the ADA Amendments Act of 2008 ("Act") raises a question "[w]hether claims of ADA violations are still barred by the Eleventh Amendment[.]"  (Opp'n at 28.)  Plaintiff is mistaken.  The Act revises the definition of disability and clarifies coverage in situations of mitigating measures and impairments that are episodic or in remission that substantially limit major life activity when active.  <u>See</u> ADA Amendments Act of 2008, Pub. L. No. 110-325, 104 Stat. 328 (codified as amended in scattered sections of 42 U.S.C. § 12101);<u>see also</u> <u>Garrett</u>, 531 U.S. at 374.

Title I "can be enforced by the United States in actions for money damages, as well as by private individual in actions for injunctive relief under Ex Parte Young[.]" See Garrett, 531 U.S. at 374 n. 9; see also Ex Parte Young, 209 U.S. 123 (1908).

The Court did not leave open the recourse of injunctive relief against a state itself under Title I.  See Savage v. Glendale Union High School, 343 F.3d 1036, 1040 (9th Cir. 2003) (citing Garrett for the proposition that 'Congress may not abrogate the sovereign immunity of the states for suits under Title I of the ADA,' and therefore a plaintiff may not sue an arm of the state in federal court for injunctive or monetary relief under Title I).  Because in the instant case, Plaintiff failed to name a state official, any prospective injunctive relief is also barred by the Eleventh Amendment immunity.  Based on the above, Plaintiff's ADA claim for money damages and injunctive relief, if any, against the State is barred by the Eleventh Amendment.[5]

---

[5] The Court disregards Plaintiff's arguments raised for the first time at the hearing.  The Court also notes that Count IV must be dismissed because Plaintiff fails to allege that he is a qualified individual with a disability under the ADA who was terminated because of his disability or provide any factual allegations to that effect. See Sanders v. Arneson Products, Inc., 91 F.3d 1351, 1353 (9th Cir. 1996); (Compl. ¶¶ 52-59.)

Accordingly, Plaintiff's claim against Department under Title I of the ADA, those claims are barred by the Eleventh Amendment and dismissed with prejudice.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Complaint with prejudice.  The Clerk of the Court is hereby directed to enter judgment in favor of Defendant.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 12, 2010.



_____
David Alan Ezra
United States District Judge

Gao v. State of Hawaii Dep't of Attorney General, Cv No. 09-00478 DAE-BMK; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE